UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OLUFOLA SABABU,

        Plaintiff,

    v.

CAROLYN W. COLVIN,

        Defendant.

Case No.  14-cv-05139-DMR

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 14, 15

Plaintiff Olufola Sababu moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Plaintiff not disabled and therefore denied his application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1382c(a)(3)(A). [Docket No. 14.]  The Commissioner cross-moves to affirm.  [Docket No. 15.]  For the reasons stated below, the court grants Plaintiff's motion and denies the Commissioner's motion, and remands the action for further proceedings.

## I.   PROCEDURAL HISTORY

Plaintiff filed an application for SSI benefits on November 15, 2011 alleging disability since August 18, 2008.  Administrative Record ("AR") 317- 25.  His application was initially denied on May 11, 2012 and again on reconsideration on December 28, 2012.  AR 223-28, 232-37.  On January 2, 2013, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ").  The first hearing before ALJ Richard P. Laverdure was held on October 16, 2013.  Plaintiff testified at the hearing, as well as an impartial vocational expert.  On October 31, 2013, the ALJ issued a decision finding that Plaintiff was not disabled.  AR 202-20.

Plaintiff requested a review by the Appeals Council.  On January 13, 2014, the Appeals Council granted Plaintiff's request for review under the substantial evidence, error of law, and new

United States District Court
Northern District of California

and material evidence provisions of the Social Security Administration regulations,  20 CFR

416.1470, and remanded the case for further proceedings before the ALJ.  AR 196-200.   The

Appeals Council stated that the ALJ had discounted the opinions of two psychological examining

sources (Dr. Franklin and Dr. Taylor) because both were based on Plaintiff's subjective

complaints and over-estimated Plaintiff's symptoms.  However, the Appeals Council noted that

the longitudinal record demonstrated that the findings and conclusions in these two opinions were

consistent with each other, even though the examinations were performed at different times.  The

Appeals Council also found them to be consistent in certain key respects with two other examining

sources, Dr. El-Sokkary and Dr. Boroff.  AR 198-199.  In light of these findings, the Appeals

Council remanded the matter with specific instructions to:

- Obtain additional evidence concerning the claimant's impairments including post-traumatic stress disorder in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 416.912-913).  The additional evidence may include, if warranted and available, consultative examinations with psychological testing and medical source statements about what the claimant can still do despite the impairments.
- Further evaluate the claimant's mental impairments in accordance with the special technique described in 20 CFR 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 416.920a(c).
- Further, if necessary, obtain evidence from a medical expert to clarify the nature and severity of the claimant's mental impairments (20 CFR 416.927(e) and Social Security Ruling 96-6p).
- Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-80).  In so doing, evaluate the treating and nontreating source opinions pursuant to the provisions of 20 CFR 416.927 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence.  As appropriate, the Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating sources.
- Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on claimant's occupational base (Social Security Ruling 85-15). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole.  The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 416.966).  Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and

resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

AR 199-200.

On June 10, 2014, the ALJ held a remand hearing and took testimony from Plaintiff, a vocational expert, and a medical expert.   AR 90-118.   The ALJ issued a second decision on August 12, 2014.   AR 9-35.   The ALJ determined that Plaintiff has the following severe impairments: poly-substance abuse, in questionable remission; narcissistic personality disorder; delusional disorder; and post-traumatic stress disorder ("PTSD").   AR 14.   The ALJ found that Plaintiff retains the following residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: no public contact, only occasional coworker contact, and work limited to simple, repetitive tasks with no production quotas.   AR 19-28.   The ALJ relied on the opinion of the vocational expert, who testified that an individual with such an RFC could perform other jobs existing in the economy, including cleaner and laboratory sample carrier.   AR 29.   Accordingly, the ALJ concluded that Plaintiff is not disabled.

Plaintiff again requested Appeals Council review.   AR 8.   The Appeals Council denied Plaintiff's request on October 31, 2014.   AR 1-3.   The ALJ's decision therefore became the Commissioner's final decision.   *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011).   Plaintiff then filed suit in this court pursuant to 42 U.S.C. § 1383(c) and 42 U.S.C. § 405(g).

## II.   THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).   The

_____

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. §§ 404.1510, 416.910.

impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows:

1.      At the first step, the ALJ considers the claimant's work activity, if any.  If the claimant is doing substantial gainful activity, the ALJ will find that the claimant is not disabled.

2.      At the second step, the ALJ considers the medical severity of the claimant's impairment(s).  If the claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 416.909, or a combination of impairments that is severe and meets the duration requirement, the ALJ will find that the claimant is not disabled.

3.      At the third step, the ALJ also considers the medical severity of the claimant's impairment(s).  If the claimant has an impairment(s) that meets or equals one of the listings in 20 C.F.R., Pt. 404, Subpt. P, App. 1 [the "Listings"] and meets the duration requirement, the ALJ will find that the claimant is disabled.

4.      At the fourth step, the ALJ considers an assessment of the claimant's residual functional capacity ("RFC") and the claimant's past relevant work.  If the claimant can still do his or his past relevant work, the ALJ will find that the claimant is not disabled.

5.      At the fifth and last step, the ALJ considers the assessment of the claimant's RFC and age, education, and work experience to see if the claimant can make an adjustment to other work.  If the claimant can make an adjustment to other work, the ALJ will find that the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the ALJ will find that the claimant is disabled.

20 C.F.R. § 416.920(a)(4); 20 C.F.R. §§ 404.1520; *Tackett*, 180 F.3d at 1098-99.

### III.    FACTUAL BACKGROUND

#### A.  **Plaintiff's Testimony and Relevant Evidence from the Record**

The record contains the following information.  Plaintiff was born in 1954.  He has a

United States District Court
Northern District of California

1   Master's degree from California State University, Los Angeles in Urban Education with a minor

2   in Pan-African Studies.  AR 461.  He is divorced and lives alone.  AR 318.  He has five children,

3   whom he talks to on a regular basis, and three grandchildren.  AR 132.

4          Plaintiff has struggled with homelessness over the years and is currently homeless.  AR

5   126, 279, 492, 624.  On August 18, 2008, during a period of homelessness, Plaintiff was attacked

6   and stabbed in the neck with a knife.  Emergency surgery was performed to repair Plaintiff's

7   jugular vein and he remained in the hospital for several days before being discharged.  AR 492.

8          Shortly after the attack, Plaintiff moved into Senior Housing Apartment with support from

9   federal and county sources.  He lived independently in this apartment from August 2008 to May

10  2013.  AR 109, 279, 318, 319, 492.  Since losing his housing in 2013, Plaintiff has been homeless.

11  AR 94, 279.  He has never had health insurance and has only had sporadic medical care.  AR 129.

12         The record does not contain a complete work history for Plaintiff.  It appears that he has

13  had only intermittent work activity.  Plaintiff wrote a book on Ebonics in 1984 that has since gone

14  out of print.  AR 578-79.  Around 1988, Plaintiff worked full-time as a long-term substitute

15  teacher in Emeryville.  AR 145.  Plaintiff also had some past work as a musician.  Plaintiff worked

16  a full-time position as a homeless shelter counselor at Watts Labor Community Action in Los

17  Angeles at some point in 2001.  AR 146-47, 346, 359.  From January to April 2006 he worked full

18  time as a food packager and dishwasher for Project Open Hand in Oakland.  AR 125, 359, 378.

19  Plaintiff stopped working at Project Open Hand because he was "overqualified for the job."  He

20  quit his job when his supervisor "cursed [him] out," and has not worked since that time.  AR 126,

21  450.

22         Although he has not been employed since leaving Project Open Hand, Plaintiff collects

23  cans and bottles to recycle and has received General Assistance.  AR 111, 128, 131.  He had also

24  volunteered from time to time, including teaching teens at a local art studio, teaching children how

25  to fix bicycles, and bringing toys and pencils to the community center.  His volunteer efforts were

26  not on a regular schedule.  He stopped volunteering altogether at some time prior to the June 2014

27  remand hearing.  AR 108-09, 165-66, 493.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

B. **Plaintiff's Relevant Medical History**

### 1. Dr. Warren Taylor

On February 27, March 14 and 20, 2012, Warren Taylor, Ph.D., conducted a psychological evaluation of Plaintiff.  AR 456-72.  Dr. Taylor conducted a mental status examination and pre-test interview, and administered six psychological tests.  Based on Plaintiff's presentation, history, interview, psychological test responses and results, and reported symptomatology, Dr. Taylor diagnosed Plaintiff with PTSD, delusional disorder (persecutory and grandiose), rule out cognitive disorder, rule out polysubstance dependence (marijuana, alcohol, and cocaine), personality disorder with paranoid and passive aggressive features with narcissistic and histrionic traits.  AR 469.  He assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 45, indicating that the Plaintiff had a serious impairment in social, occupational, or school functioning.  *Id.* Dr. Taylor noted that Plaintiff appeared to have difficulty with his short-term memory because he could only remember one out of the three objects that Dr. Taylor gave him after five minutes had passed.  AR 458-59.

Dr. Taylor concluded that Plaintiff would "be unable to work on a regular and consistent basis within the next 12 to 18 months based on his unresolved issues vis-a-vis being stabbed in the neck."  AR 469.  Dr. Taylor diagnosed Plaintiff with chronic PTSD because he had "many symptoms in excess of those required to make the diagnosis," several "particularly severe" symptoms, and exhibited marked impairment in social and occupational functioning."  AR 469-70.  He concluded that Plaintiff had "severe psychopathology that precludes an effective and consistent work effort."  AR 470.   He noted that any substance use issues that Plaintiff had were secondary to his more chronic and pervasive mental health problems, specifically his PTSD, Delusional Disorder and Personality Disorder.  AR 470.

Dr. Taylor opined that Plaintiff had an extreme level of impairment with respect to his ability to perform activities within a schedule and maintain regular attendance.  He noted that in his twenty-one years as a licensed clinical psychologist, Plaintiff was the third person who, without out a very good excuse, needed three sessions to complete the evaluation.  AR 456-57, 471.  Dr. Taylor also opined that Plaintiff had marked impairment with regard to his ability to

6

United States District Court
Northern District of California

respond appropriately to changes in work settings, to complete a normal workday and workweek without interruptions from psychologically based symptoms, to maintain concentration, attention and persistence, to make judgments on simple work-related decisions, and to carry out detailed (complex) instructions.  AR 471.

### 2.  Dr. Ahmed El-Sokkary

On March 7, 2012, consultative examiner Ahmed El-Sokkary, Psy.D., evaluated Plaintiff at the Social Security Administration's request.  AR 448-450.  Dr. El-Sokkary diagnosed Plaintiff with Anxiety disorder, rule out PTSD (chronic with delayed onset), personality disorder, and a GAF level of 63.  AR 452.  He concluded that Plaintiff had the capacity to understand, remember, and perform simple to moderately difficult tasks, and that Plaintiff was able to maintain a sufficient level of concentration, persistence, and pace to do basic to moderately complex work in an environment that his health condition would allow.  *Id.*  Dr. El-Sokkary also noted that Plaintiff was capable of adequately communicating and therefore would be able to interact with supervisors and co-workers, but "could have difficulties from time to time keeping a regular workday/workweek schedule without interruptions from psychiatric symptoms."  *Id.*

### 3.  Dr. Lesleigh Franklin

On October 31, 2012, Lesleigh Franklin, Ph.D., conducted a psychological evaluation of Plaintiff.  She performed a clinical interview and a number of tests, and reviewed Plaintiff's records.  AR 490.  Dr. Franklin noted that Plaintiff had many good functional living skills despite his mental health problems and that he understood all independent living concepts.  AR 493.  She found that Plaintiff had difficulties with work related skills including trouble following a work schedule, difficulty following simple or complex directions due to poor short term memory, and trouble taking direction from authority figures.  AR 493.  She observed that although Plaintiff was able to attend a very part time volunteer job, he was able to do so because the organization was forgiving of his tardiness and times when he failed to show up.  *Id.*

Dr. Franklin diagnosed Plaintiff with PTSD (Chronic), Narcissistic Personality Features and a GAF score of 45.  AR 498.  Dr. Franklin found that Plaintiff "clearly" met all of the criteria for PTSD, observing that he became "highly distressed when he is exposed to reminders of the

attack, and avoids talking about it or thinking about it whenever possible," had recurrent thoughts about the attack, and ongoing nightmares.  AR 499.  She noted that Plaintiff could not follow a normal work schedule at all, had impaired executive functioning and attention skills, that his immediate memory was poor, and that he needed time and practice to remember things.  *Id.*

### 4.  Dr. Michael Boroff

Michael Boroff, Psy.D., treated Plaintiff at the Alameda County Healthcare for the Homeless- TRUST clinic in October and November 2013.  AR 601.  Dr. Boroff prepared a psychological evaluation of Plaintiff based on his sessions with Plaintiff and a review of the psychological evaluations prepared by Drs. Taylor, Franklin, and El-Sokkary.  *Id.*

Dr. Boroff reported that Plaintiff was "one of the most difficult clients to enter our clinic," remarking that this was especially noteworthy because the TRUST clinic serves a severely mentally ill population that is often challenging and difficult to engage.  AR 602.  He diagnosed Plaintiff with severe mental illness in the form of Delusional Disorder (Persecutory and Grandiose), PTSD, and Narcissistic Personality Disorder, and assigned him a GAF level of 40. AR 602-03.

Plaintiff's PTSD symptoms included nightmares, intrusive memories, avoidance of people that remind him of his trauma, hypervigilance, irritability, angry outbursts, mistrust of others, and a negative perception of the world.  AR 602.  He also found that Plaintiff had a persecutory delusion that housing companies and social services had conspired to make him homeless and keep him so.  *Id.*   Plaintiff's Narcissistic Personality Disorder manifest in symptoms including a grandiose sense of self-importance, profound sense of entitlement, lack of empathy, interpersonal exploitativeness, and arrogant, haughty behaviors and attitudes.  *Id.*

Dr. Boroff opined that Plaintiff's personality disorder was the most disabling, as it severely disrupted his ability to be socially appropriate with others.  Plaintiff had "seemingly constant contempt" for others, and could not successfully engage with staff at the clinic who were working hard to help him.  Dr. Boroff concluded that it was "difficult to imagine" Plaintiff holding a job that involved any engagement with others, even in minimal ways.  AR 602.

In July 2014, Dr. Boroff provided an update.  He noted that Plaintiff had not participated in

United States District Court
Northern District of California

1   further therapy, but continued to frequent the TRUST clinic and interact with the case managers.

2   Dr. Boroff stated that Plaintiff is "often disruptive," and is "rude, hostile and entitled toward

3   everyone with whom he speaks."  He reported that the TRUST clinic specializes in providing

4   intensive services to the homeless population, and the clinic had never before had to consider

5   restricting a client from accessing services due to behavior issues, but that clinic staff had

6   contemplated banning Plaintiff from the premises due to his extreme behavior.  Referring to this

7   situation, Dr. Boroff concluded:

8

9   > This is a unique situation in our clinic's history and speaks to the severity of Mr.
    > Sababu's narcissism.  Given his level of intelligence and cognitive functioning,
10  > as well as his education, it would be expected that Mr. Sababu would have been
    > much more able to provide for himself, stay housed, and stay employed.
11  > However, he has struggled in these areas for much of his adult life.  Clearly, his
    > personality disorder has interfered with his ability to function in these areas and
12  > has done so for many years.

13  AR 624.

14  **5.  Dr. Martin Cary**

15  Dr. Martin Cary reviewed Plaintiff's medical records and testified as a medical expert at

16  the June 10, 2014 remand hearing.  AR 96-114.  Dr. Cary testified that Plaintiff's primary

17  impairment was his personality disorder, and that he also appeared to have mild PTSD.  AR 98.

18  He noted that "social functioning is where [Plaintiff] seems to have the biggest problem," but

19  opined that Dr. Boroff's experience with Plaintiff appeared to be an "outlier,"  and was perhaps

20  the result of the evaluations occurring during "an especially bad period of [Plaintiff's] life" in

21  October and November 2013.  AR 104.  Dr. Cary noted that with something like a personality

22  disorder, "a person can control that behavior if they're so motivated."  AR 105.  Dr. Cary testified

23  that there was no suggestion that Plaintiff was malingering, and if anything, he seemed to

24  minimize his problems.  AR 102.  In relation to deterioration, Dr. Cary noted that there were no

25  indicators that Plaintiff had been hospitalized for psychiatric reasons or been jailed for fights or

26  difficulties with other people.  AR 104.  With regard to work-related limitations, Dr. Cary opined

27  that Plaintiff could perform simple, detailed, and complex tasks, but that Plaintiff's public contact

28  should be "limited."  AR 105.  Dr. Cary noted that Plaintiff had been able to sit through two and a

half to three and a half hours of evaluations.  AR 101.  Dr. Cary also opined that Plaintiff would be able to get along with supervisors because he was "cooperative" when he went in for medical treatment and he had been able to volunteer and spend time at the senior center.  AR 108.

### 6.  Treatment Records for Physical Impairments

The record also contains various physical treatment records, including providers' opinions about Plaintiff's physical limitations.  The court does not discuss the physical treatment records, because Plaintiff does not challenge the ALJ's findings that Plaintiff's reported physical ailments did not qualify as severe impairments.  These include pain and nerve damage in the right neck and right side of his face, and eye damage that blurs his vision resulting from an August 2008 stabbing in the right side of his neck, difficulty with his left foot due to a car accident in December 2013, and a head injury from an assault in March 2014.  AR 14-15.

## IV.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a mere scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal citation omitted).  When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d

1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## V.    ISSUES PRESENTED

1.   Whether the ALJ erred in weighing the medical opinions;

2.   Whether the ALJ erred in rejecting Plaintiff's testimony; and

3.   Whether the ALJ erred by failing to follow the Appeals Council Remand Order.

## VI.    DISCUSSION

### A.  **The ALJ's Evaluation of the Medical Opinions**

Plaintiff argues that the ALJ erred in weighing the medical opinions.  Specifically, he argues that the ALJ erred by improperly rejecting the examining opinions of Drs. Taylor and Franklin and the treating opinion of Dr. Boroff, in favor of the opinions of Dr. Cary and Dr. El-Sokkary.

### 1.  **Legal Standard**

Courts employ a hierarchy of deference to medical opinions based on the relation of the doctor to the patient.  Namely, courts distinguish between three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians:" those who examine but do not treat the claimant ("examining physicians"), and those who neither examine nor treat the claimant ("non-examining physicians").  *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-examining physician's opinion.  *Id.*

The Social Security Act tasks the ALJ with determining credibility of medical testimony and resolving conflicting evidence and ambiguities.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  A treating physician's opinion, while entitled to more weight, is not necessarily conclusive.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).  To reject the opinion of an uncontradicted treating physician, an ALJ must provide "clear and convincing reasons."  *Lester*, 81 F.3d at 830; *see, e.g.*, *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (affirming rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *see also* 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL

United States District Court
Northern District of California

374188 (July 2, 1996).[2]  If another doctor contradicts a treating physician, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence to discount the treating physician's opinion.  *Lester*, 81 F.3d at 830.  The ALJ meets this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Reddick*, 157 F.3d at 725 (citation omitted).  "[B]road and vague" reasons do not suffice.  *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).  This same standard applies to the rejection of an examining physician's opinion as well.  *Lester*, 81 F.3d at 830-31.  A non-examining physician's opinion alone cannot constitute substantial evidence to reject the opinion of an examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984), though a non-examining physician's opinion may be persuasive when supported by other factors.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that opinion by "non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record"); *Magallanes*, 881 F.2d at 751-55 (upholding rejection of treating physician's opinion given contradictory laboratory test results, reports from examining physicians, and testimony from claimant).  An opinion that is more consistent with the record as a whole generally carries more persuasiveness.  *See* 20 C.F.R. § 416.927(c)(4).

### 2.  Analysis

#### a.  The ALJ's Weighing of the Psychological Opinions

The ALJ accorded the greatest weight to the non-examining opinion of Dr. Cary.  The ALJ noted that Dr. Cary was the only professional to review the entire record, his opinion was the most thorough and well-reasoned analysis based on all the evidence, and not merely on the claimant's subjective complaints and reporting, and Dr. Cary also considered Plaintiff's activities of daily living, as well as his behavior with other examiners and treating sources.  The ALJ accorded great

---

[2] "[Social Security Rulings ("SSRs") do not carry the 'force of law,' but they are binding on ALJs nonetheless."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009).  The Ninth Circuit gives them deference so long as they do not produce "a result inconsistent with the statute and regulations."  *Bunnell v. Sullivan,* 947 F.2d 341, 346 n. 3 (9th Cir. 1991).

United States District Court
Northern District of California

weight to consultative examiner Dr. El-Sokkary, little weight to the examining opinions of Drs. Taylor and Franklin, and no weight to the treating opinion of Dr. Boroff.  AR 26-28.  Plaintiff argues that the ALJ erred by giving too much weight to Drs. Cary and El-Sokkary, and improperly discounted the opinions of Drs. Taylor, Franklin and Boroff.

### i.   Dr. Taylor and Dr. Franklin's Opinions

As discussed above, the Appeals Council remanded the matter because the ALJ had discounted Dr. Taylor and Dr. Franklin's opinions even though their findings and conclusions demonstrated longitudinal consistency, and important aspects of their opinions were consistent with other opinions in the record.  AR 198-199.  The Appeals Council instructed the ALJ to obtain additional evidence regarding the claimant's impairments, including if warranted, further consultative examinations.  AR 199.  It does not appear that the ALJ developed the medical record as instructed.

Curiously, the ALJ's decision on remand accords Dr. Taylor and Dr. Franklin's opinions a slight promotion (from "no weight" to "little weight"), even though the ALJ appears to discount their opinions for much the same reasons as given in the first decision.  While all of the ALJ's reasons for discounting the opinions are specific, none are legitimate, nor are they supported by substantial evidence.

First, the ALJ expressed concern that both examiners took Plaintiff's self-report about his past work activities at face value (e.g., Plaintiff's statements that he had worked in the past as a teacher, author, and musician), even though his official earnings record is sparse.  The ALJ discounted their opinions on this basis, stating that neither examiner actually "knew" Plaintiff's "baseline" before the 2008 stabbing, and therefore did not have a firm basis from which to conclude that Plaintiff's executive functioning had been impaired as a result of the stabbing incident.  AR 23.  As an initial matter, there is no record evidence that Plaintiff is either a malingerer, or is prone to exaggeration.  Indeed, when the ALJ asked Dr. Cary whether there was any suggestion in the record of embellishment or malingering, Dr. Cary responded that the opposite was true – that Plaintiff seemed to be "minimizing" his problems, and that he did not show "malingering behavior."  AR 102.  Moreover, Plaintiff's earnings record does not cast doubt

United States District Court
Northern District of California

1  on Plaintiff's statements about his past work.  Plaintiff stated that he had worked as a substitute

2  teacher in Emeryville and as a shelter counselor at Watts Labor Community Action in Los

3  Angeles, and that he did some work for Catholic Charities, along with some past work as a

4  musician.  He also reported that he wrote a book on Ebonics.  AR 145-47, 578-79.  Plaintiff did

5  not claim that these jobs were lucrative.  His earnings record shows that he earned some income

6  from 1980-99 [AR 341-42], including from Skid Row Development Corp. [AR 343], Watts Labor

7  Community Action in Los Angeles [AR 346], Shreveport Staffing LLC Command Labor &

8  Staffing [AR 347], LFI For Pierce Inc. Labor Finders [AR 347], and Catholic Charities of the

9  Dioceses of Oakland [AR 365].  AR 334-338, 356-57, 365-68.  Plaintiff never stated that he held

10  full-time employment as a musician, and he told Dr. Franklin that when the economy started to

11  fail he was not as well paid for his music.  AR 492.  And as for Plaintiff's statement that he

12  authored a book on Ebonics in 1984 that has since gone out of print, Dr. Taylor was able to

13  confirm that fact through an internet search.  AR 578-79.

14      On this record, the ALJ did not have a legitimate basis for discounting Dr. Taylor and Dr.

15  Franklin's opinions based on their acceptance of Plaintiff's self-reports about his past work.   On

16  the present record, the two examiners were entitled to credit Plaintiff's recounting of his past

17  work-related activities.  *Regennitter v. Comm'r of Soc. Sec. Admin.,* 166 F.3d 1294, 1300 (9th Cir.

18  1999) (substantial evidence did not support ALJ's finding that examining psychologists took

19  claimant's "statements at face value" where psychologists' reports did not contain "any indication

20  that [the claimant] was malingering or deceptive").

21      Next, the ALJ found that Plaintiff's lack of mental health treatment prior to October 2013

22  undercut Drs. Franklin and Taylor's opinion that Plaintiff suffered from PTSD symptoms that

23  were "so severe that he was unable to function at all."  AR 23.  First of all, this is an

24  overstatement.  The opinions do not state that Plaintiff was "unable to function at all."  Moreover,

25  Plaintiff need not show that he was "unable to function at all" in order to qualify for benefits.

26  *Cooper v. Bowen,* 815 F.2d 557, 561 (9th Cir. 1987) (noting that a disability claimant need not

27  "vegetate in a dark room" in order to be deemed eligible for benefits).  More to the point, the

28  Ninth Circuit has repeatedly and particularly criticized the use of a lack of treatment to reject

14

United States District Court
Northern District of California

1  mental complaints both because mental illness is "notoriously underreported" and because "it is a

2  questionable practice to chastise one with a mental impairment for the exercise of poor judgment

3  in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citing

4  *Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir. 1989)); *Regennitter*, 166 F.3d at 1299-300.

5  Under the Social Security Rulings, the ALJ must not draw any inferences about an

6  individual's symptoms and their functional effects from a failure to seek or pursue regular medical

7  treatment without first considering any explanations that the individual may provide, or other

8  information in the case record, that may explain infrequent or irregular medical visits or failure to

9  seek medical treatment.  SSR 96-7P, 1996 WL 374186 (July 2, 1996).  The regulation also

10  provides examples of reasons why an individual may not seek regular medical treatment, including

11  that the individual may be unable to afford treatment and may not have access to free or low-cost

12  medical services, and that an individual may decide not to take prescription medication because

13  the side effects are less tolerable than the symptoms.

14  There is evidence in the record that Plaintiff's conditions led him to avoid treatment.  Dr.

15  Franklin noted that after the stabbing, Plaintiff coped by trying "not to consider his emotions at

16  all," "avoid[ing] therapy" and "rush[ing] through discussions of the trauma."  AR 499.  She

17  opined that his narcissistic personality features contributed to his avoidance of treatment and

18  "exacerbate his difficulties because he does not believe that others can understand him or are

19  competent enough to help him, so he avoids treatment."  AR 497-99.  When Dr. Franklin

20  discussed strategies with Plaintiff to improve his memory and executive functioning, he "regarded

21  them with suspicion and skepticism," was "highly uncomfortable being told that he appeared to

22  have some problems" and repeated that most people could not understand him.  AR 499.

23  Dr. Taylor concluded that Plaintiff should be referred for long-term psychotherapy and

24  targeted psychopharmacologic medications, but opined that Plaintiff was "not likely to sustain a

25  therapeutic course without a heavy dose of repeated caring and empathy" and that "even reactions

26  of rage may be expected."  AR 470.  After attempting to treat Plaintiff, Dr. Boroff concluded that

27  due to Plaintiff's personality order and accompanying attitude, it is unlikely that Plaintiff would

28  benefit significantly from therapy.  AR 602.

15

1   Plaintiff's own testimony reveals two additional reasons for his sparse medical treatment:

2   his lack of health insurance, as well as his resistance to psychotropic medicines because of side

3   effects (doctors are "always trying to give me those psychotropic drugs, which have people like

4   zombies.  I don't want to be no zombie.").  AR 129, 133.  On this record, Plaintiff's lack of mental

5   health treatment prior to October 2013 is not a legitimate basis for discounting Dr. Taylor and Dr.

6   Franklin's opinions.

7   The ALJ next attacks the validity and reliability of Dr. Taylor's opinion by pointing to a

8   typographical error and suggesting that Dr. Taylor copied and pasted material from another

9   evaluation into Plaintiff's evaluation.  AR 24.  This is patently unfair, and does not provide a

10  legitimate reason for discounting Dr. Taylor's opinion.  Dr. Taylor's seventeen-page report is

11  replete with personalized details, analysis of test results, impressions and conclusions that leave no

12  doubt in the reader's mind that he took care in preparing Plaintiff's evaluation.  The single error

13  cited by the ALJ, which uses a name other than Plaintiff's, appears in a boilerplate two-sentence

14  paragraph which describes the format for reporting diagnostic impressions.  AR 469.  It is

15  completely understandable that a psychologist might cut and paste such a standard descriptive

16  paragraph, instead of inventing the same wheel anew.  Judges have been known to take the same

17  short cut.

18  Finally, the ALJ did not find Dr. Franklin's report credible because it "clearly overstates"

19  the claimant's report of his symptoms.  AR 23.  This itself is an overstatement, and is not a

20  legitimate basis for discounting Dr. Franklin's report.  To begin with, the ALJ misquotes Dr.

21  Franklin, thereby setting up a false attack.  The ALJ says:

22

23  Dr. Franklin concludes that the claimant "clearly meets" all of the criteria for
    PTSD, citing "recurrent thoughts," "ongoing nightmares," irritability, and anger

24  (...), but these symptoms do not reflect what the claimant himself reported in the
    interview.  Earlier, Dr. Franklin noted that the claimant stated he has a sleep

25  disturbance, eating problems, and nightmares (...), but there is no indication that he
    stated these were "recurrent" or "ongoing."

26

27  AR 23 (citations omitted).  Thus, the ALJ's criticism focuses on Dr. Franklin's alleged

28  overstatements about the "recurrent" or "ongoing" nature of Plaintiff's sleep disturbance, eating

United States District Court
Northern District of California

problems and nightmares.

> Dr. Franklin's actual use of the words "recurrent" and "ongoing" are as follows:
> Plaintiff clearly meets all of the criteria for [PTSD]. *He has recurrent thoughts*
> *about the attack on him, and he has ongoing nightmares.* He becomes highly
> distressed when he is exposed to reminders of the attack, and he avoids talking
> about it or thinking about it whenever possible. He is irritable and angry and has a
> sleep disturbance.

AR 499 (emphasis added). Thus, Dr. Franklin did not state what the ALJ accuses her of

overstating. Moreover, all of her observations are confirmed within her report. And most

importantly, all are confirmed across evaluations by numerous examiners. *See* Taylor at 458

(recurrent thoughts about attack, sleep disturbance, nightmares, loss of appetite); El-Sokkary at

450-451 (nightmares, recurrent thoughts about the trauma, sleep and appetite problems); Boroff at

590, 601-602 (nightmares, intrusive memories, appetite disturbance).

In sum, upon review of the record, the court finds that the ALJ did not provide legitimate

reasons supported by substantial evidence for discounting Dr. Taylor and Dr. Franklin's opinions.

This legal error alone provides a basis for remand.

### ii.  Dr. Boroff's Opinion

The ALJ accorded "no weight" to Dr. Boroff's opinion, in favor of the contradicting

opinions of consultative non-examiner Dr. Cary and consultative examiner Dr. El-Sokkary. As

noted above, the ALJ must provide "specific and legitimate reasons" supported by substantial

evidence to discount the treating physician's contradicted opinion. *Lester*, 81 F.3d at 830. The

ALJ provided two reasons for rejecting Dr. Boroff's opinion. First, Dr. Boroff reported extremely

uncooperative behavior by Plaintiff, which was an "outlier" when viewed against the rest of the

record. Other records demonstrate that even though Plaintiff has a personality disorder with

narcissistic traits as well as PTSD, he has been able to relate reasonably well with others,

including his other examiners. Second, Plaintiff's reported activities of daily living, including

Plaintiff's volunteer work with youth to fix bicycles and teach art, undercut Dr. Boroff's

observations about Plaintiff.[3]  AR 26-27.

---

[3] The ALJ also construed Dr. Boroff's opinion regarding Plaintiff's extremely impaired social
functioning as contradicted by examining Drs. El Sokkary and Franklin's opinions that Plaintiff

United States District Court
Northern District of California

1    With respect to the ALJ's first stated reason, it is fair to say that Dr. Boroff's experiences

2  with Plaintiff appear to be more extreme when compared with the experiences of others.  For

3  example, although Dr. Franklin observed that Plaintiff "demonstrated severe anxiety, irritability,

4  and anger" when speaking about the stabbing incident, he was otherwise "open and cooperative"

5  during the evaluation.  AR 494.  Dr. Taylor does not discuss whether Plaintiff was cooperative,

6  but his detailed report demonstrates that he was able to engage Plaintiff at length in the interview

7  and testing process.  Dr. Taylor did, however, remark upon the fact that Plaintiff took three

8  separate days to complete his evaluation without adequate excuses for doing so.  AR 471.  Dr. El-

9  Sokarry described Plaintiff as "agitated and angry and at times not cooperative," but also

10  determined that Plaintiff was "capable of adequately communicating."  AR 451-452.

11    The ALJ's "outlier" reasoning is nevertheless troubling.  In accepting Dr. Cary's opinion

12  that Dr. Boroff's examination was "an outlier," the ALJ cited to Dr. Cary's explanation that

13  "perhaps the claimant was undergoing a particularly bad period during those two months from

14  October to November 2013."  AR 18.  Dr. Cary's explanation amounts to pure speculation, for it

15  completely ignores Dr. Boroff's July 2014 record, which establishes that Plaintiff was still

16  behaving in an extremely antisocial manner nearly a year later.  AR 601-603.  Reviewing the

17  record as a whole, it is entirely possible that Dr. Boroff's opinions and observations accurately

18  reflect Plaintiff's limitations as of 2014, especially with respect to social functioning.  It may well

19  be that Plaintiff's condition had deteriorated by the time he started visiting Dr. Boroff's clinic, for

20  Dr. Boroff's examinations took place a year or more after the others.  *See* AR 450 (El-Sokarry;

21  March 2012); AR 456 (Taylor; February and March 2012); (Franklin; October 2012).  And as

22  noted above, the reports of all three examiners contain some evidence of the seeds of non-

23  cooperation, agitation, and antisocial behavior.  While Plaintiff's presentation was most extreme

24  before Dr. Boroff, it was not wholly inconsistent with the examining opinions of Drs. Taylor and

25

26

27  had, at most, moderate limitations in social function.  AR 24.

28

18

1  Franklin, which resulted in diagnoses for the same conditions.[4]

2      The problem lies with the fact that the ALJ did not follow the Appeals Council's first

3  instruction – to obtain more medical information.  On remand, the ALJ "shall take any action that

4  is ordered by the Appeals Council and may take any additional action that is not inconsistent with

5  the Appeals Council's remand order." § 404.977(b).  Additionally, an ALJ deciding a Social

6  Security case has an independent duty to develop the record, which is especially important in the

7  case of mental impairments.  *DeLorme v. Sullivan,* 924 F.2d 841, 849 (9th Cir.1991).  This duty

8  exists even when the claimant is represented by counsel.  *Id.*  If the ALJ is uncertain as to the basis

9  of a doctor's opinion, he has a duty to conduct an "appropriate inquiry."  *Smolen,* 80 F.3d at 1288.

10      After noting certain key consistencies between the opinions of Drs. Taylor, Franklin, El-

11  Sokkary and Boroff, the Appeals Council directed the ALJ to obtain additional information

12  concerning the claimant's impairments, including consultative examinations with psychological

13  testing.  AR 199.  The record does not reflect that this occurred.  The only act the ALJ took to

14  "develop" the medical record was to obtain the testimony of Dr. Cary, but this implemented a

15  separate Appeals Council instruction.  (*See* AR 199: "Further, if necessary, obtain evidence from a

16  medical expert to clarify the nature and severity of the claimant's mental impairments").  Had the

17  ALJ followed the Appeal Council's first instruction, the record would contain updated medical

18  opinions, which could provide the ALJ with a sound basis for determining whether or not Dr.

19  Boroff provided an "outlier" opinion.  For this reason, the ALJ's "outlier" justification for

20  according no evidentiary weight to Dr. Boroff's opinion is not fully supported.

21      The ALJ's second reason for according no weight to Dr. Boroff's opinion is that Plaintiff's

22  reported activities of daily living conflicted with Dr. Boroff's assessment of Plaintiff's

23  functioning.  AR 17-18, 24, 598-99 602.  Plaintiff reported that he was able to sustain himself and

24  maintain his own apartment for five years, ride a bicycle for transport, and get food from food

25  _____

26  [4] Drs. Franklin or Taylor both diagnosed Plaintiff with a personality disorder, noting the
   narcissistic feature, and PTSD.  AR 470-71, 497-99.  Dr. Taylor concluded that Plaintiff had
27  "severe psychopathology that precludes an effective and consistent work effort," had "an
   extremely low tolerance" for frustration, and avoids and does not like interacting with others, and
28  found that he had marked difficulty with social functioning.  AR 469-70.

United States District Court
Northern District of California

banks and churches when he ran out of food stamps.  AR 17-18, 24.

For the most part, this is a specific and legitimate reason supported by substantial evidence.  Dr. Boroff's evaluation does not focus on the physical aspects of Plaintiff's activities of daily living, and his opinion therefore does not conflict with Plaintiff's reports about his ability to take care of his personal grooming, maintain an apartment, or ride a bicycle.  However, Dr. Boroff's opinions do conflict with Plaintiff's reported activities to the extent they implicate social functioning.  Dr. Boroff opined that Plaintiff had extreme difficulties in maintaining social functioning.  AR 599.  This is inconsistent with some of Plaintiff's reports.  In February 2012, Plaintiff self-reported that he spent time with others, although rarely, and did not have any problems getting along with family, friends, neighbors, or others.  AR 387-88.  He also stated that he visited the senior citizen center and volunteered in afterschool programs where he fixed bicycles for children.  AR 444.  In March 2012, he reported that he was often in contact with his five children and three grandchildren.  AR 450.  In October 2012, Plaintiff reported that he volunteered at a local art studio teaching teens once a week and that he saw the volunteer work as therapy that was helping him to overcome anger and fearfulness.  AR 492.  Dr. Franklin noted that he was able to attend a "very part time" volunteer job, in part, because the organization was forgiving of his tardiness and times when he failed to show up.[5]  AR 493.  Plaintiff also reported good relationships with several of his children and that he had some friends he saw when he felt up to it.  AR 493.

In sum, the ALJ's reasons for discounting Dr. Boroff's opinion were partially but not wholly specific and legitimate, or supported by substantial evidence.  In particular, the ALJ did not adequately supplement the medical record as instructed by the Appeals Council in order to properly assess Dr. Boroff's evaluation.

## B.  The ALJ's Credibility Determination

Plaintiff next challenges the ALJ's finding that his statements concerning the intensity,

---

[5]  At the June 2014 remand hearing, Plaintiff reported that he no longer volunteers, and that even when he did, it was never a regular or everyday occurrence.  AR 108-09.

persistence, and limiting effects of his symptoms were "not entirely credible."

### 1.  Legal Standard

In general, credibility determinations are the province of the ALJ.  "It is the ALJ's role to resolve evidentiary conflicts.  If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984) (citations omitted).  An ALJ is not "required to believe every allegation of disabling pain" or other nonexertional impairment.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (citing 42 U.S.C. § 423(d)(5)(A)).  Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted).  If an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so.  *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).  In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "must specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Id.* at 972 (quotations omitted); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (ALJ must articulate reasons that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").  The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281 (citations omitted).  First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345

1    (9th Cir. 1991) (en banc) (citation omitted).  Absent affirmative evidence that the claimant is

2    malingering,[6] the ALJ must provide specific "clear and convincing" reasons for rejecting the

3    claimant's testimony.  *Smolen*, 80 F.3d at 1283-84.

### 2.  Analysis

5        The ALJ found that Plaintiff's "medically determinable impairments could reasonably be

6    expected to cause some alleged symptoms; however, the claimant's statements concerning the

7    intensity, persistence and limiting effects of these symptoms are not entirely credible."  AR 20.

8    Since there was no evidence that Plaintiff was malingering, the ALJ was required to provide

9    specific "clear and convincing" reasons for rejecting his testimony.  *Smolen*, 80 F.3d at 1283-84.

10    The ALJ provided three reasons for not finding Plaintiff's testimony credible: 1) Plaintiff's lack of

11    treatment undercut his allegations of disabling mental impairments; 2) Plaintiff's reported

12    activities of daily living under cut his allegations of disability; and 3) Plaintiff made inconsistent

13    statements regarding his substance use and work history.  AR 24-25.

14        As to the ALJ's first reason, as analyzed above with respect to the opinions of Drs. Taylor

15    and Franklin, the ALJ should not have discounted Plaintiff's credibility due to his lack of

16    treatment.  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (rejecting

17    argument that conservative course of treatment undermined claimant's allegations of debilitating

18    condition where he testified that he resisted taking other medications due to adverse side effects

19    and his insurance did not cover the only medication that provided significant relief).

20        The ALJ's second reason is partially well-taken, for as discussed above, Plaintiff's

21    accounts of his daily life activities were inconsistent with his claim of disability, in some respects.

22    Engaging in daily activities that are incompatible with the severity of symptoms alleged can

23    support an adverse credibility determination.  *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir.

24    2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).  However,

25    substantial evidence does not support the ALJ's finding that Plaintiff made inconsistent statements

---

[6] The ALJ did not conclude that Plaintiff was a malingerer.  Dr. Cary testified that Plaintiff did not exhibit malingering behavior and "seemed to be minimizing" his problems and that the record did not reflect any malingering behavior.  AR 102.

United States District Court
Northern District of California

1   about his work history.  *See* discussion of Drs. Taylor and Franklin, above.

2         With respect to the third and final reason, Plaintiff did not challenge the ALJ's finding

3   that Plaintiff's inconsistent statements about substance use hindered his credibility.  Pl.'s Reply at

4   5 (conceding that Plaintiff did not challenge this issue).  In conclusion, some but not all of the

5   ALJ's analysis constituted clear and convincing reasons for not fully crediting Plaintiff's

6   statements.

7         C.  **The Appeals Council Remand Order**

8         Plaintiff contends that the ALJ's August 2014 decision erred by failing to comply with the

9   Appeals Council Remand Order.  Specifically Plaintiff asserts that the ALJ failed to comply with

10  the Appeal Council's fourth instruction to give further consideration to the claimant's maximum

11  residual functional capacity during the entire period at issue, and to provide rationale with specific

12  references to evidence of record in support of assessed limitations.  AR 199.

13        Plaintiff points out that the Remand Order specifically notes that in evaluating the nature

14  and severity of the Plaintiff's mental impairments, the ALJ "discounted the opinions of

15  psychological examining sources W. Taylor, PhD., and L. Franklin, PhD. because the opinions are

16  based on the claimant's subjective complaints and they over-estimate the claimant's symptoms.

17  However, review of the longitudinal record indicates that the opinions of both examiners contain

18  findings and conclusions that are consistent with each other even though the examinations were

19  performed at different times."  AR 198.  The Appeals Council also noted that Drs. Taylor and

20  Franklin had opinions that were "consistent with other evidence of record, including an examining

21  source opinion from Ahmed El-Sokkary, Psy.D., that received significant weight in the hearing

22  decision."  AR 198.  The Appeals Council found that that Drs. Taylor and Franklin diagnosed

23  Plaintiff with post-traumatic stress disorder and a narcissistic disorder (as part of a personality

24  order, and Dr. El-Sokkary's diagnosed rule out post-traumatic stress disorder (chronic with

25  delayed onset) and a personality disorder.  AR 198-99.

26        Plaintiff's argument regarding the ALJ's failure to follow the Appeals Council Order on

27  remand is substantively an argument that the ALJ failed to properly consider and weigh the

28  medical opinions in the record.  The court has already analyzed this substantive issue above.

United States District Court
Northern District of California

D.  **Remand**

The court finds that the ALJ committed legal error in according little weight to Drs. Taylor and Franklin.  The court also finds that the ALJ's failure to develop the medical record as instructed by the Appeals Council prevented the ALJ from conducting a proper assessment of Dr. Boroff's opinions.  Finally, the court finds that some but not all of the analysis provided by the ALJ amounted to clear and convincing reasons for finding Plaintiff not fully credible.

A court may remand a disability case for further proceedings "if enhancement of the record would be useful."  It may only remand for benefits, on the other hand, "where the record has been fully developed and further administrative proceedings would serve no useful purpose." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

For the reasons set forth in this order, the court finds that the record would benefit from further development, particularly of the medical evidence.

VII.    **CONCLUSION**

For the foregoing reasons, the court remands this case for further development of the medical record consistent with this order.

**IT IS SO ORDERED.**

Dated: March 22, 2016

_____

Donna M. Ryu
United States Magistrate Judge